UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KAREN L MELNICK, | ) |
| --- | --- |
| PLAINTIFF | ) |
| vs. | ) CAUSE NO. 3:16-CV-532 RLM-MGG |
| NANCY A. BERRYHILL,[1] ACTING COMMISSIONER OF SOCIAL SECURITY, | ) |
| DEFENDANT | ) |

OPINION AND ORDER

Karen Melnick seeks judicial review of a final decision by the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g). For the following reasons, the court vacates the Commissioner's decision and remands this case for further proceedings consistent with this opinion.

I. BACKGROUND

Ms. Melnick's application for Disability Insurance Benefits was denied initially, on reconsideration, and after an administrative hearing at which she and a vocational expert testified. Based on the record before him, the ALJ found

---

[1] Nancy A. Berryhill was automatically substituted as the defendant in this case when she replaced Carolyn W. Colvin as the Acting Commissioner of Social Security pursuant to Federal Rule of Civil Procedure 25(d).

that Ms. Melnick had severe impairments, abdominal pain secondary to a gastrointestinal disorder and essential hypertension, but concluded that none of her impairments met or medically equaled any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1.

The ALJ decided that Ms. Melnick had the residual functional capacity to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), with limitations;[2] but could perform her past relevant work as a healthcare facility administrator. The ALJ concluded that Ms. Melnick wasn't disabled within the meaning of the Social Security Act and wasn't entitled to benefits.

When the Appeals Council denied Ms. Melnick's request for review, the ALJ's decision became the final decision of the Commissioner. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

II. STANDARD OF REVIEW

The issue before the court isn't whether Ms. Melnick is disabled, but whether substantial evidence supports the ALJ's decision that she wasn't disabled. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue,

---

[2] The ALJ concluded that Ms. Melnick couldn't climb ladders, ropes, or scaffolds; kneel; or crouch. He determined she could frequently crawl but was limited to only occasionally climbing ramps or stairs; stooping, balancing or reaching overhead or in any other direction with her left hand; and handling, fingering, or feeling bilaterally.

2

553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434–435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). ALJs must "sufficiently articulate their assessment of the evidence to assure [the court] that they considered the important evidence and to enable [the court] to trace the path of their reasoning." Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir. 2002) (internal quotations omitted).

III. Discussion

Ms. Melnick argues that the ALJ made several errors requiring remand: (1) the ALJ didn't properly weigh the opinions of Dr. Vidya Kora, nurse practitioner Brittany Hausman, or psychologist Sharon Sacks, Ph.D.; (2) the ALJ didn't properly evaluate Ms. Melnick's depression, anxiety disorder, bacterial infection, or chronic fatigue syndrome; and (3) the ALJ's finding that Ms. Melnick could perform her past relevant work was founded on legal error and wasn't supported by substantial evidence. Ms. Melnick asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

*A. The ALJ's Weighing of the Medical Opinions*

Ms. Melnick first argues that the ALJ didn't properly weigh the opinions of Dr. Kora, nurse practitioner Hausman, or Dr. Sacks.

1. Dr. Vidya Kora

The ALJ recognized that Dr. Kora, an internist, was Ms. Melnick's treating physician but gave his opinion little weight. A treating physician's opinion is to get "controlling weight" if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). "Even if an ALJ gives good reasons for not giving controlling

weight to a treating physician's opinion, [he] has to decide what weight to give that opinion" and provide "good reasons" for the weight ultimately afforded to it. Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010); *see also* Eakin v. Astrue, 432 Fed. Appx. 607, 612 (7th Cir. 2011). The applicable regulations "guide that decision by identifying several factors that an ALJ must consider: 'the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion.'" Campbell v. Astrue, 627 F.3d at 308 (quoting Larson v. Astrue, 615 F.3d 744, 751 (7th Cir.2010)).

The ALJ, who wrote a very thorough opinion in many respects, discussed several of the regulatory factors, including Dr. Kora's specialty and the types of tests performed, but his opinion doesn't demonstrate that he considered length and frequency of the treating relationship. *See* Campbell v. Astrue, 627 F.3d 299, 308 (7th Cir. 2010) (holding that the ALJ must "explicitly address the checklist of factors as applied to the medical opinion evidence"). *But see* Henke v. Astrue, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that the ALJ's discussion of two of the relevant factors was sufficient even though the ALJ didn't "explicitly weigh every factor while discussing her decision to reject [a medical opinion]").

The larger problem with the ALJ's treatment of Dr. Kora's opinion is that the ALJ concluded it lacked support in the record, and so discounted it, without acknowledging relevant evidence supporting it. Dr. Kora opined in a medical source statement that Ms. Melnick couldn't stand or walk for more than an hour

5

during a work day. The ALJ, on the other hand, found that she could perform light work, which "requires a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The ALJ discredited Dr. Kora's opinion, opining that his "restrictions on standing/walking . . . are not supported by the evidence that generally shows a stable gait, normal sensation, intact reflexes and no consistent use of an ambulatory device or boot." While acknowledging that Ms. Melnick complained of falling, the ALJ highlighted evidence suggesting that "her strength and gait have generally been intact."

The record contains some medical records indicating normal gait and intact ambulation, but also includes multiple reports of abnormal gait, dizziness, and falls. During at least five separate treatment visits over a two-year period, Dr. Kora assessed that Ms. Melnick's gait was ataxic, abnormal, or disturbed. On four occasions, his review of her neurological systems indicated dizziness. Dr. Kora also diagnosed a rib contusion resulting from a fall.

Consultative examiner Ralph Inabnit, D.O. and nurse practitioner Jennifer Jimenez corroborated Dr. Kora's findings. Dr. Inabnit concluded that Ms. Melnick had ataxic gait and incoordination causing falls, while nurse practitioner Jimenez found that Ms. Melnick exhibited "lightheadedness with collapse," dizziness, and vertigo.

"An ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence." Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009). The court's review of the record indicates that

6

the ALJ impermissibly "identified pieces of evidence in the record that supported [his] conclusion . . . [and] ignored related evidence that undermined [his] conclusion" that Dr. Kora's standing and walking restrictions were excessive. Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014). *See also* Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009); Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009).

2. Nurse Practitioner Hausmann

Ms. Melnick similarly contends that the ALJ didn't properly weigh the opinion of nurse practitioner Hausman. Under the regulations in effect at the time of the Social Security Administration's final decision denying Ms. Melnick benefits, Ms. Hausmann was neither a treating source nor an "acceptable medical source." *See* 20 C.F.R. § 404.1502 ("[t]reating source means your own physician, psychologist, or other acceptable medical source"); 20 C.F.R. § 404.1513(d) (nurse practitioner isn't an "acceptable medical source"). The Social Security Administration considered nurse practitioners "medical sources who are not 'acceptable medical sources.'" SSR 06-03p (rescinded effective March 27, 2017 but in effect at the time of the ALJ's decision). "In deciding how much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in [the regulations]," including the degree to which it is consistent with the record. Phillips v. Astrue, 413 F. App'x 878, 884 (7th Cir. 2010).

Ms. Hausmann submitted a medical source statement opining that Ms. Melnick couldn't stand or walk for more than an hour during a work day. Like he did with Dr. Kora, the ALJ discounted Ms. Hausmann's opinion, stating her "restrictions on standing/walking . . . are not supported by the evidence that generally shows a stable gait, normal sensation, intact reflexes and no consistent use of an ambulatory device or boot."

As previously discussed, there is a line of evidence in the record that could support restrictions on standing and walking that the ALJ didn't address. The ALJ didn't properly consider the degree to which Ms. Hausmann's opinion was supported by the medical evidence, selectively considered the medical evidence, and ignored evidence supporting her opinion. *See* Scrogham v. Colvin, 765 F.3d 685, 698 (7th Cir. 2014); Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009); Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009).

### 3. Sharon Sacks, Ph.D.

Ms. Melnick contends that the ALJ improperly discounted psychologist Sharon Sacks's opinion, specifically the Global Assessment of Functioning score she assessed. The ALJ thoroughly discussed Dr. Sacks's report, noting that Dr. Sacks assessed a GAF score of 60, which suggests moderate symptoms, and assigned it only some weight, finding that a single GAF score "is not a good indicator of long-term functioning and tends to be a subjective snapshot in time of the claimant's functioning level."

The ALJ's decision to assign the GAF score only some weight and his rationale were permissible because a "single GAF score at a particular point in time, in particular a score that signals psychological symptoms that are somewhere between mild and moderate, is not conclusive of a disability . . . and does not reflect the clinician's opinion of functional capacity." Perkins v. Colvin, 632 F. App'x 849, 853 (7th Cir. 2015); Voigt v. Colvin, 781 F.3d 871, 875 (7th Cir. 2015) (recognizing that GAF scores can vary "a great deal" depending on how a "patient happens to feel the day he's examined"). The ALJ's opinion shows that he properly considered Dr. Sacks's opinion, offered good reasons for the weight he assigned the GAF score, and didn't err when he assigned it only some weight.

Based on the foregoing, the record shows the ALJ didn't err in considering Dr. Sacks's opinion, but remand is required so that the ALJ can properly weigh the opinions of Dr. Kora and Ms. Hausmann based on the record as a whole.

### B. The ALJ's Severe Impairments Determination

Ms. Melnick next asserts that the ALJ erred because he found that her depression wasn't severe, allegedly didn't discuss her anxiety disorder or consider whether her bacterial infection and its severe consequences resulted in residual functional limitations, and ignored evidence of chronic fatigue syndrome.

"[T]he ALJ is required to determine at step two of the sequential analysis whether the claimant in fact has an impairment or combination of impairments

9

that is 'severe.'" Castile v. Astrue, 617 F.3d 923, 926 (7th Cir. 2010) (citing 20 C.F.R. § 404.1520(a)(4)(ii). Ms. Melnick carries the burden of proof that an alleged impairment is severe. Id.

The ALJ's discussion of Ms. Melnick's mental impairments spans three pages of his decision. The ALJ thoroughly reviewed her depression, anxiety, and concentration and memory problems. He noted that her depression began in 2006 and he recognized that she continued working despite her depression. He also highlighted that she was diagnosed with anxiety disorder, caused in part by depression. He discussed Dr. Sacks's consultative examination and a behavioral assessment, which found depression and an anxiety disorder. He also noted that after a change in medication late in 2013, "she complained of no anxiety, no depression, no sleep complaints, no fatigue, no recent weight loss, no memory lapses" and more recent evidence showed "some waxing and waning of depressive symptoms." The ALJ recognized that Ms. Melnick reported memory and concentration problems, but pointed to medical evidence indicating her memory and concentration were intact.

Ms. Melnick points to some evidence in the record that the ALJ didn't cite, but an "ALJ is not required to address every piece of evidence or testimony presented." Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). The ALJ's discussion of the severity of her mental impairments was sufficient to provide the court "a 'logical bridge' between the evidence and the conclusions" allowing the court to "assess the validity of the agency's ultimate findings and afford the

claimant meaningful judicial review." Id.

Ms. Melnick next asserts that the ALJ erred by not considering whether a severe bacterial infection that resulted in a coma prior to her alleged onset date required any residual functional limitations. The ALJ's opinion demonstrates that he did consider the extent to which her bacterial infection resulted in limitations. He recognizing that the infection resulted in a coma over a year before her amended disability onset date and that "she has not had a recurrence of the bacterial infection nor has she experienced any residual effects noted as stemming from her history of a bacterial infection." Based on his review of the record, he concluded that during the relevant period her bacterial infection was a non-severe impairment.

Ms. Melnick doesn't cite any evidence in the record that would support any additional limitations or develop her argument beyond her conclusory statement that the ALJ erred, so the court finds no error in the ALJ's treatment of this impairment. *See* Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016).

Ms. Melnick also contends that the ALJ ignored evidence of chronic fatigue syndrome and didn't consider its impact on her ability to engage in full-time work. The court agrees. Dr. Kora assessed that Ms. Melnick suffered from chronic fatigue syndrome but the ALJ's opinion never refers to chronic fatigue syndrome, citing instead Ms. Melnick's "complaints of fatigue." The ALJ concluded that fatigue didn't "cause more than minimal limitations in [her] ability to perform basic mental work activities and [was] therefore nonsevere"

11

and, in support, highlighted one medical report from 2014 in which Ms. Melnick reported that she felt better, had no fatigue, and was sleeping well with medications.

The ALJ didn't acknowledge that Dr. Kora—Ms. Melnick's treating physician—described chronic fatigue syndrome as an "active problem" in ten of his reports between 2012 and 2014. This was an error. *See* Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) ("[a]n ALJ may not selectively consider medical reports, especially those of treating physicians, but must consider all relevant evidence").

While the ALJ's decision demonstrates he properly found that Ms. Melnick's mental impairments and her bacterial infection were non-severe, the court can't conclude that he properly considered the medical evidence related to chronic fatigue syndrome and, on remand, the ALJ should determine the severity of her chronic fatigue syndrome and whether it limits her ability to work full-time.

*C. Past Relevant Work*

Ms. Melnick contends that the ALJ erred at step four of the sequential analysis when he determined that she could perform her past work as a healthcare facility administrator. She asserts that the ALJ didn't clearly and explicitly compare the demands of her past work with her residual functional capacity as required by Social Security Ruling 82-62. *See* SSR 82-62, 1982 WL

12

31386 (1982) (the ALJ must carefully consider "the limiting effects of the person's impairment(s) and the physical and mental demands of his or her [past relevant work] to determine whether the individual can still do that work").

At first glance, the court of appeals decision in *Nolen v. Sullivan* appears to support Ms. Melnick's argument, seeming to require that an ALJ discuss each of the previous job's physical and mental requirements and note whether the claimant's limitations prohibit her from completing the task. *See* Nolen v. Sullivan, 939 F.2d 516, 518 (7th Cir. 1991) (stating that "the ALJ must list the specific physical requirements of the previous job and assess, in light of the available evidence, the claimant's ability to perform these tasks"). "But th[e] court [of appeals] has construed *Nolen* more narrowly, holding that an ALJ cannot describe a previous job in a generic way, e.g., "sedentary," and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting," and not requiring a detailed analysis comparing the past job's requirements to the claimant's limitations. Cohen v. Astrue, 258 F. App'x 20, 28 (7th Cir. 2007).

The ALJ didn't run afoul of the court of appeals' requirements. At the hearing, the vocational expert provided a detailed description of the position of healthcare facility administrator, Ms. Melnick's past work, including the types of skills required. The vocational expert testified that a hypothetical individual with the limitations included in the ALJ's residual functional capacity finding would be able to perform the work of a healthcare facility administrator as it is generally

13

performed in the national economy. Rather than concluding that she could perform her past work because it was defined as light, the ALJ "compar[ed] the claimant's residual functional capacity with the physical demands of this work, and [took] into consideration the [vocational expert's] testimony" regarding the requirements of the healthcare facility administrator position and concluded that Ms. Melnick could perform her past work as a healthcare facility administrator. The court of appeals doesn't require more. *See* Cohen v. Astrue, 258 F. App'x 20, 28 (7th Cir. 2007).[3]

IV. CONCLUSION

The court VACATES the Commissioner's decision and REMANDS this case for further proceeding consistent with this opinion.

SO ORDERED.

ENTERED:     October 10, 2017

　　　　　　　　　　　　　　　　　　/s/ Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　　Judge, United States District Court

---

[3] Ms. Melnick noted that if she were limited to sedentary work, she would have been presumptively disabled according to the grids. But she didn't develop this argument, stating only: "Ms. Melnick's testimony in conjunction with the record as a whole is far more consistent with a sedentary RFC than the light RFC found by the ALJ." This undeveloped argument is deemed waived. *See* Crespo v. Colvin, 824 F.3d 667, 674 (7th Cir. 2016) ("perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived") (quoting United States v. Berkowitz, 927 F.2d 1376, 1384 (7th Cir. 1991)).